UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YER LEE,<br><br>   Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>   Defendant. | No.  2:22-cv-01497 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born 1978, applied on March 11, 2019 for DIB, alleging disability beginning September 26, 2017.  Administrative Transcript ("AT") 15, 27.  Plaintiff alleged she was unable to work due to back pain, depression, right hip injury, right leg pain, anxiety, and sleep problems. AT 217-219, 235, 301.  In a decision dated August 31, 2021, the ALJ determined that plaintiff

was not disabled.[1]  AT 15-28.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2021.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of September 26, 2017, through her date last insured of March 31, 2021.
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease, degenerative disc disease, depression, anxiety, and post-traumatic stress.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equalled one of the listed impairments in 20 CFR Part 404, Subpart

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except with a sit/stand option, meaning repositioning every thirty to forty-five minutes while remaining on task, frequently climbing ramps or stairs, balancing while standing or walking on level terrain, kneeling, stooping, crouching, or crawling, occasionally climbing ladders, ropes, or scaffolds; she can perform simple, routine, and repetitive tasks and have occasional interactions with others.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born [in] 1978 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. The claimant has a marginal education.

9. Transferability of job skills is not material to the determination of disability[.]

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed.[2]

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 26, 2017, the amended alleged onset date, through March 31, 2021.

AT 17-28.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinion evidence; (2) the ALJ erred in discounting plaintiff's subjective symptom testimony; (3) the ALJ erred in formulating the residual functional capacity (RFC); and (4) the ALJ's hypothetical to the VE did not include all of plaintiff's limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

---

[2] The ALJ relied on vocational expert (VE) testimony that plaintiff could perform jobs such as final inspector, press operator, and small product assembler. AT 27-28.

1  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial
2  evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340
3  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable
4  mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th
5  Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is
6  responsible for determining credibility, resolving conflicts in medical testimony, and resolving
7  ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
8  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
9  rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

10  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
11  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
12  conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not
13  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see
14  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the
15  administrative findings, or if there is conflicting evidence supporting a finding of either disability
16  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
17  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
18  weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

19  ANALYSIS

20      A.  Medical Opinions

21  Plaintiff asserts that the ALJ improperly evaluated certain medical opinions.  From
22  plaintiff's motion for summary judgment, it is difficult to ascertain which medical opinions are at
23  issue, and how the ALJ allegedly erred with respect to them.  ECF No. 11-1 at 19-21.  For one,
24  plaintiff claims that the ALJ erred by rejecting the opinion of her treating psychiatrist, Dr. Kevin
25  Tucker.  See also ECF No. 14 at 5 (plaintiff's reply brief).  Plaintiff's reply clarifies her position
26  that the ALJ also erred by discounting certain clinical examination findings by Dr. Robert Egbert.
27  Id. At 6.
28      "The ALJ is responsible for translating and incorporating clinical findings into a succinct

RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed his application in 2019, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

1. Dr. Tucker

As to Dr. Tucker, plaintiff's treating psychiatrist at the county mental health department, The ALJ evaluated a May 2021 mental assessment to do work-related activities. AT 24, citing AT 539-40, 671-72 (same). The ALJ discussed this opinion as follows:

> Kevin Tucker, D.O., a general psychiatrist, opined that the claimant had a poor ability to relate to others, maintain attention and concentration, deal with stressors, and behave in an emotionally stable manner, as well as a fair ability to understand, remember, and carry out simple instructions. This opinion is not found to be persuasive. While it was supported by an explanation on the form, the opinion is inconsistent with the overall evidence. Here, the claimant was calm and cooperative on exam. Her memory was within normal limits. The claimant's attention and concentration were only mildly impaired to within normal limits. Her judgment was normal. The claimant's flow of thought was normal. Her sleep improved with medication. The claimant admitted to having thoughts of death, but denied any intent or plan to harm herself. At other exams, she continued to deny any suicidal ideation. Moreover, there was no evidence of any inpatient psychiatric hospitalization. Therefore, the overall evidence is not consistent with the opined limitations, particularly the claimant's normal memory and concentration.

AT 24-25 (record citations omitted); see also AT 20 (finding plaintiff had mild limitations in concentration/persistence/pace and adapting/managing oneself, but had other moderate mental limitations).

As set forth above, the ALJ rejected Dr. Tucker's findings that plaintiff's mental functioning in several areas was poor to fair. On the other hand, the ALJ rejected the opinions of two state agency consultants who opined that plaintiff did not have a severe mental impairment. AT 23, citing AT 71-80, 82-91. In sum, the ALJ found plaintiff to be more mentally limited than the agency physicians opined, but less limited than Dr. Tucker opined, as reflected in the RFC.

Plaintiff argues that the ALJ's discounting of Dr. Tucker's opinion is inconsistent with his discounting the agency opinions. But the ALJ is allowed to reject two contradictory opinions and find a middle ground. See Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("In any event, the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."), citing Andrews v. Shalala, 53 F.3d 1035, 1039–40 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities.").

Plaintiff next argues that the ALJ should have credited Dr. Tucker's opinion that plaintiff's ability to be reliable was poor, given her "extensive reports of panic attacks." ECF No. 11-1 at 21. The ALJ discussed the panic attack evidence earlier in the opinion, but also noted that plaintiff was "calm and cooperative at several exams." AT 20. The ALJ found her to have moderate limitations in interacting with others, based in part on the evidence of panic attack and "anger outbursts," and incorporated this into the RFC. AT 20, 21. To the extent plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).

2. Dr. Egbert

Plaintiff asserts that the ALJ erred by discounting certain physical clinical examination findings by Dr. Egbert. Specifically, plaintiff asserts the ALJ erred "by disregarding without explanation Dr Egbert's 11-14-17 clinical examination findings . . . [that] demonstrated increased pain on the right" and "atrophy of the right calf[.]" ECF No. 14 at 6, citing AT 344-45.

The ALJ considered two 2017 opinions by Dr. Egbert concerning plaintiff's physical functional limitations. AT 329-30 (February 7, 2017), 30 (November 14, 2017). He found these opinions "somewhat persuasive, as they were supported by exams and are somewhat consistent with the overall evidence." AT 25. The ALJ continued:

> Given the claimant's back pain, treatment measures, hip pain, diagnostic imaging, and exam findings, the undersigned limited the claimant to the light exertional level and assigned a sit/stand option, which is consisted with the opined limitations.
>
> Still, the claimant had a normal gait. There was no use of any assistive device. Range of motion testing of the claimant's back was normal. . . . She also had normal musculoskeletal strength in her upper and lower extremities. The claimant reported that she was doing better, in regards to her pain, with medication. Moreover, a provider noted that the claimant's back and leg pain was stable. As such, the evidence is not consistent with the opined limitations that bending, stooping, lifting, and carrying [are] limited to fifteen minutes per hour.

AT 25 (emphasis added; record citations omitted).

7

Though plaintiff argues for a different interpretation of the evidence, she has not shown that the ALJ committed reversible error in failing to adopt every aspect of Dr. Egbert's opinion. The ALJ's evaluation of both opinions is supported by substantial evidence and includes the requisite discussion of supportability and consistency, and the court finds no error therein.

B.  Credibility

Plaintiff claims the ALJ erred in finding her subjective symptom testimony not fully credible. See AT 23 (finding "claimant's symptoms about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the evidence.").

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020). This

standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

At the first step of the required credibility analysis, the ALJ found objective evidence of medical impairment, finding the following impairments to be severe: degenerative joint disease, degenerative disc disease, depression, anxiety, and post-traumatic stress disorder. AT 18. The ALJ proceeded to discuss medication, treatment, and functional restrictions with respect to these conditions. As to physical limitations, he concluded that "the overall evidence, including exam findings, imaging, and lack of an assistive device, are inconsistent with the alleged limitations to lifting, squatting, bending, reaching, sitting, kneeling, and stair climbing." AT 23. "Moreover," the ALJ noted, plaintiff's 2019 report to a treating provider that her pain was improving was not "fully consistent with her testimony at the hearing." AT 23; compare AT 414 (medical note that plaintiff reported doing better on her chronic pain medication) with AT 47-48 (hearing testimony that plaintiff could not go back to working as a seamstress because she could not sit for long periods without pain).

As to mental functioning, the ALJ summarized the record evidence and concluded: "The overall exam findings, imaging, and treatment are not consistent with the assertion . . . that the claimant's impairments are so severe that they prevent her from being able to perform basic work activities." AT 23; see also AT 20-21 (summarizing mental evidence to find moderate and mild limitations in mental functioning).

Plaintiff takes issue with only a few aspects of the ALJ's credibility analysis. As plaintiff notes, the ALJ based his credibility finding "on the grounds that plaintiff had a normal gait, and had normal strength in her upper and lower extremities, and medication helped to stabilize her back and leg pain, and her memory was within normal limits, and her attention and concentration were only mildly impaired." ECF No. 11-1 at 23, citing AT 26. Plaintiff argues that the ALJ erred by "disregarding without explanation" Dr. Egbert's November 14, 2017 physical exam

9

findings as to pain on the right side and atrophy in the right calf. However, the ALJ was not required to cite every piece of medical evidence in his credibility analysis, and he noted Dr. Egbert's exam findings earlier in the opinion, where he concluded that plaintiff should be limited "to a light exertional level and assigned a sit/stand option[.]" AT 25.

Plaintiff further argues that the ALJ "disregarded without explanation" certain county treatment records, showing problems with focus and concentration. ECF No. 11-1 at 23. But the ALJ discussed these records earlier in the opinion, when analyzing plaintiff's mental limitations. AT 20. He was not required to cite them again in the credibility analysis. Because the ALJ used the proper process and provided proper reasons supported by substantial evidence, the court defers to his credibility determination.

Plaintiff additionally argues that the ALJ erred by discrediting the lay testimony of two of plaintiff's relatives, Julie Vang and Mai Feng Yang. See AT 26-27. The ALJ considered these opinions but found them to be "inconsistent with the overall evidence" of physical and mental impairment, as discussed in the opinion. Id. In short, the ALJ rejected the lay testimony for the same reasons as plaintiff's. See Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness). The undersigned finds no error on this basis.

### C. Remaining Arguments

Plaintiff next argues that, in light of her MRI and electrodiagnostic (EMG) findings and history of panic attacks, the ALJ erred in formulating the RFC. However, the ALJ considered this evidence in formulating the RFC. See AT 20 (discussing panic attacks and "daily anger outbursts"), 22 (discussing imaging of lumbar spine, right hip and leg, which "supports a limitation to reduced range of the light exertional level"). Plaintiff's arguments boil down to a wish for the evidence to be weighed differently and, as such, are unavailing.

Plaintiff also argues that the hypothetical question posed to the vocational expert (VE) did not take into account her "right radiculopathy that causes severe pain" or the limitations opined by Dr. Tucker. ECF No 11-1 at 28. However, as discussed above, the ALJ considered this

evidence in formulating the RFC, which included a sit-stand option and limited plaintiff to occasional interactions with others. The ALJ's hypothetical to the VE reflected the assessed RFC, and the VE responded that, while such an individual could not perform plaintiff's past skilled work as a seamstress, there were other jobs in the national economy she could perform, even if she could not read or write in English. AT 63-65; <u>see</u> AT 27-28 (relying on VE testimony to find plaintiff nondisabled). The undersigned finds no error on this basis.

<u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is granted; and

3. Judgment is entered for the Commissioner.

Dated: February 14, 2024

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/lee1497.dib.ckd